FRANK S. MOORE, APPELLEE, V. HUFFMAN BROTHERS MOTOR COMPANY, APPELLANT.

FILED JANUARY 13, 1922. No. 21866.

Contracts: STOCK SALES CONTRACT: CONSTRUCTION. Contract construed, and *held* to mean that under the terms of said contract the plaintiff had a right to demand that defendant issue stock to whomsoever he might direct, to the amount of commissions due him on stock sales paid for on the date of the demand, and, upon failure or refusal of defendant to issue said stock, the balance due should be paid in cash.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*W. H. Herdman,* for appellant.

*Fred C. Foster, O. K. Perrin* and *S. M. Kier,* contra.

Heard before LETTON, DAY and DEAN, JJ., ALLEN and BEGLEY, District Judges.

BEGLEY, District Judge.

This is an action brought by Frank S. Moore, appellee, hereinafter called plaintiff, against Huffman Brothers Motor Company, appellant, hereinafter called defendant, in equity, for an accounting of moneys due on a certain written contract. In the court below a decree was entered awarding to plaintiff a money judgment for $10,-784.42, and defendant prosecutes this appeal to this court to reverse said decree.

The plaintiff was a stock salesman in the employ of the defendant. The contract in controversy was entered into shortly after the plaintiff severed his connection with the defendant. At the time of the making of the contract there were certain stock sales that had been paid for by purchasers and on which the plaintiff was entitled to the sum of $9,000, which was then due and payable in money. There were other sales on which settlement had not been made, the commissions on these sales aggregating $5,723, and which would be due and payable as soon as settled for by the purchasers of the stock, the precise amount due at any given time being the commission on the sales actually settled for. There was also due the plaintiff $3,100 on a note given by the defendant to the plaintiff. At a meeting of the parties regarding settlement of the indebtedness to the plaintiff, the defendant made the plaintiff a proposal of settlement in writing, which the plaintiff accepted. The proposal and acceptance is the contract, and the same reads as follows:

"Omaha, May 6, 1920.

"Mr. F. S. Moore, Omaha, Nebraska.

"Dear Sir: Confirming our conversation, it has been determined and is agreed between us that your portion of normal commissions accrued and unpaid on stock issued to date, in which you are interested, amounts to $5,723, and it is specifically understood that, of said stock issued, there remains unpaid stock to the par value of $23,500 which must be fully paid in cash before the commission

of $5,723 becomes fully earned and payable.

"It is also understood and agreed that on any stock sold which for any reason we are obliged to cancel or refund to the purchaser and on which commissions have been previously paid or included in above computation that your portion of such commissions shall be deducted from any credits you may have.

"In addition to the conditional amount of $5,723 there is also due you $3,100 on note of this company, and $9,000 original commissions, these three items totaling $17,823.

"It is understood and agreed that the amount of commissions as stated is computed upon straight percentage basis as cash fully paid and that in some instances there are deductions yet to be made covering discounts on liberty bonds, certificates of deposit, interest refunded, etc.

"It is agreed that you are to immediately purchase one Huffman passenger car at an agreed price of $1,691 which will be deducted from the $17,823 above referred to, leaving a conditional balance due you of $16,132, which if and when fully earned is to be paid by preferred stock in Huffman Brothers Motor Company, to the amount of $19,000 par value, any small difference between this amount and what your credits would purchase in stock at $85 per share to be paid in cash.

"Said stock is to be issued upon demand to whomsoever you may direct, but in view of the conditions above stated, we are not to issue stock in excess of the amount that your earned and fully-payable credits will purchase.

"It is also agreed that as soon as stock at $85 per share, to the amount of $10,000, has been issued that you will surrender the $3,100 note that you hold.

"If for any reason the $19,000 stock, or any portion of it, cannot or is not issued, as agreed above, then in that case the balance due shall be paid in cash.

"It is further agreed that this arrangement when completed shall be construed as full and final settlement in

satisfaction of all claims, agreements, promises, or under-
standings.

                    "Yours very truly,
             · "(Signed) Huffman Bros. Motor Co.,
                 "By W. M. Clement, Acting Secretary.
"Accepted, F. S. Moore."

There is no serious dispute of fact in the record. The
precise question for determination in this appeal is rather
one of construction of the written contract above set
forth and a determination of the rights of the parties
under said contract. The defendant concedes that the
$9,000 on completed sales, together with the $3,100 repre-
sented by the note, were due upon the execution of the
contract, and that plaintiff has since received the Huff-
man passenger car at the agreed price of $1,691 and that
defendant has issued to plaintiff 47 shares of the pre-
ferred stock of the defendant corporation of the value of
$3,995; that plaintiff has surrendered up the $3,100 note
and made written demand upon defendant to issue 100
shares of preferred stock of the defendant corporation to
Andrew K. Nelson, and charge said stock to plaintiff's
account, which written demand was refused by defendant.

The question of differences between the parties arises
over the item of $5,723 of the so-called normal commis-
sions upon the sales of stock not settled for at the time
of the execution of the contract of settlement. Defend-
ant contends that no part of the normal commissions
amounting to $5,723 was due and payable to plaintiff
under said contract until all the capital stock sold by
plaintiff, on which said normal commissions accrued, was
fully paid for by the purchasers. Plaintiff contends that
he has a right under said contract to demand payment for
each sale of stock when the purchaser pays for the same.
There were 13 sales of this stock on which the commis-
sions aggregated $5,723. It was stipulated by the parties
on the trial that the sum of $1,352.54 was to be deducted
for canceled or unpaid stock, leaving a balance of $4,-

370.46 in the hands of defendant on normal commissions.

We think that a fair construction of the contract is that the "conditional balance of $16,132" became an absolute balance due plaintiff when the full amount of the stock upon which commissions therein computed was fully paid to defendant, and that the actual balance due plaintiff at any given time was the amount of commissions in the hands of defendant, received from stock sold by plaintiff, which was fully paid for by the purchasers; and that plaintiff had a right, under said contract, to demand that defendant issue stock to the amount of comisions on stock sales paid for on the date of the demand, but no further, and upon failure of defendant to issue the stock the balance due was to be paid in cash. At the time of the demand for the issuance of 100 shares of stock at the agreed value of $85 per share, there was due plaintiff, in the hands of the defendant, the sum of $6,414 on original commissions, and the further sum of $4,370.46 on the normal commissions, making a total due plaintiff from defendant of the sum of $10,784.46, and under the terms of the contract, upon refusal of the defendant to issue preferred stock, the said amount was made payable in cash.

The decree of the district court is therefore right and is

AFFIRMED.